IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ATWOOD OCEANICS, INC., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| M/V PAC ALTAIR, her engines, boilers, ) | |
| etc., *in rem*; and Altair Maritime Pte Ltd, ) | CIVIL ACTION: 15-00456-KD-C |
| PACCShip UK Ltd, PACC Container ) | |
| Line Pte Ltd, C.H. Robinson Project ) | |
| Logistics, C.H. Robinson Worldwide, Inc., ) | |
| J.F. Moore International, Inc. and J.F. Moore) | |
| International (M) SDN BDH, *in personam*, ) | |
|     Defendants. ) | |

**ORDER**

This matter is before the Court on Plaintiff's Partial Motion for Summary Judgment (Docs. 29, 35-37), certain Defendants[1] Altair Maritime Pte Ltd., PACCShip UK Ltd and PACC Container Line Pte Ltd.'s Response (Doc. 45, 47, 48), Plaintiff's Reply (Doc. 50, 51) and Defendants' Sur-Reply (Doc. 55); and Defendants' motion for leave to submit additional evidence (Doc. 78).

**I.     Background**[2]

On September 17, 2015, Plaintiff Atwood Oceanics, Inc. (Plaintiff) initiated this maritime action[3] against M/V PAC ALTAIR (her engines, boilers, etc. *in rem*) and Altair Maritime Pte

---

[1] This summary judgment does not concern the remaining defendants., C.H. Robinson Project Logistics, C.H. Robinson Worldwide, Inc., J.F. Moore International, Inc. and/or J.F. Moore International (M) SDN BDH.

[2] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[3] Plaintiff asserts admiralty and maritime jurisdiction under Rule 9(h) of the Federal Rules of Civil

1

Ltd., PACCShip UK Ltd and PACC Container Line Pte Ltd., C.H. Robinson Project Logistics, C.H. Robinson Worldwide, Inc., J.F. Moore Intl., Inc. and J.F. Moore International (M) SDN BDH (*in personam*).  (Doc. 1).  Plaintiff is an offshore drilling company which purchased 85 marine drilling riser joints and one (1) "crate seals accessories" (the cargo) pursuant to an October 8, 2014 Bill of Lading No. PCLW325XPKM001 (BOL).[4]  (Id.)  Plaintiff identifies itself as the owner, shipper and consignor to the cargo (as its purchaser).  (Id.)

The cargo was damaged en route from Port Klang, Malaysia to Mobile, Alabama while aboard the M/V PAC ALTAIR (the vessel) as "on-deck" cargo when a rogue wave hit the vessel.[5]  One (1) riser was lost overboard and at least three (3) other risers suffered external physical damage.  As a result, Plaintiff sued the Altair and PACC entities as the Carriers, owners and operators of the vessel owing duties and responsibilities for the cargo under *COGSA*, 46 U.S.C. § 30701 *et seq*.; the C.H. Robinson entities as freight forwarders who made all of the transportation arrangements for the shipment; and the J.F. Moore entities who were hired to inspect and observe how the cargo was loaded/stowed aboard the vessel and to certify its suitability for the voyage.  (Doc. 1 at 2).  Plaintiff alleges six (6) claims against these defendants for breach of contract for common carriage, negligence, gross negligence, fraudulent

---

Procedure, as well as diversity jurisdiction per 28 U.S.C. §1332. (Doc. 1 at 2 at ¶¶2,4).  However, complete diversity appears lacking in this case as Plaintiff and Defendants C.H. Robinson Project Logistics, and J.F. Moore International, Inc. are both corporate citizens of Texas with their respective principal places of business in Houston, Texas.  (Id. at 2-4).  Thus, Plaintiff has not established complete diversity of citizenship to predicate its claim on same in this Court.  As a result, any/all remedies lie in admiralty.

[4] Plaintiff referenced a different Bill of Lading in the Complaint -- PCLW325XPLM001.  The Court presumes this was simply a typographical error as Plaintiff's subsequent references to the relevant BOL match those referenced by defendants, and match the actual number on the BOL submitted to the Court.

[5] The vessel was loaded on October 8, 2014 in Malaysia with the riser units destined for a facility in Mobile, Alabama.  (Doc. 29-7).  On October 14, 2014, en route to its first stop at Padang, Sumatra, Indonesia, the vessel was reportedly struck by a rogue wave causing one (1) riser to be lost overboard and other risers to be damaged.  (Id.)  See also (Doc. 29-10 at 1, 4).

misrepresentation, negligent misrepresentation and breach of express/implied warranty.   (Id.)

Plaintiff's partial summary judgment motion concerns only Plaintiff and the Carrier defendants and a dispute over one (1) document – Bill of Lading #PCLW325XPKM001.   (Doc. 29-5 at 2; Doc. 29-6 at 2).    The BOL was issued by the Paccship defendants.   (Doc. 29-1 at 7). The Merchant on the BOL is defined in Section 1, as the shipper, receiver, consignor, consignee, holder of the BOL, owners of the cargo and any person entitled to possession of the cargo. (Doc. 29-6 at 2 at ¶1).    The relevant BOL details are as follows.[6]

First, the face of the BOL provides that the "85 pieces joint risers and 1 crate seals accessories" (cargo) are "shipped on deck at shippers risk & expense."   (Doc. 29-5 at 2 (emphasis added)).    The face of the BOL states that the cargo is:

> SHIPPED on board in apparent good order and condition (unless otherwise stated herein) the total number of Containers/ Packages or Units indicated in the Box…and the cargo …value unknown, for carriage to the Port of discharge…to be delivered in the like good order and condition at the Port of Discharge unto the lawful holder of the Bill of Lading….In accepting this Bill of Lading the "Merchant" expressly accepts and agrees to all its stipulations on both Page 1 and Page 2, whether written, printed stamped or otherwise incorporated, as fully as if…all signed by the Merchant.

(Id.)   The "Shipper's declared value" was left blank.   (Doc. 29-5 at 1).

Second, the liability of the Carrier for carriage between port of loading and port of discharge is specified in Section 3(a): "the Carrier shall in no case be responsible for loss of or damage to cargo…with respect to deck cargo[.]"   (Doc. 29-6 at 2 at ¶3(a) (emphasis added). "The aggregate liability of the Carrier…under this Contract shall in no circumstances exceed the

---

[6] The BOL provides that disputes arising out of or in connection to the BOL shall be exclusively determined by the courts and law of the Carrier's principal place of business.   (Doc. 29-6 at 2 at ¶4).    Plaintiff has identified the Carrier as the Altair and PACC defendants.    The principal place of business of the Carrier Altair and PACCship are London, United Kingdom; and Great World City, Singapore for Carrier PACC Container.   (Doc. 1 at 3 at ¶¶7-8).   The parties have waived this forum selection/venue aspect of this clause in the BOL as well as any previously raised defenses with regard to whether venue/forum is proper in this Court. (Docs. 1, 60, 72, 73).

limits of liability for the total loss of the cargo under sub-clause 3(a) or if applicable the Additional Clause."  (Id. at 2 at ¶3(c)).

Third, the Additional Clause provides: "[i]n case the Contract evidenced by this Bill of Lading is subject to" COGSA, COGSA "shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody[.]"  (Id. at 2 at Additional Clause(i)).  And "[i]f COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package…."  (Id. at Additional Clause (ii)).[7]

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>    **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>    **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object

---

[7] The BOL provides "the Hague Rules…as amended by…the Hague-Visby rules…and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply[.]"  (Doc. 29-6 2 at ¶3(a)). The country of shipment, Malaysia, has enacted the Hague Rules but it does not appear they have enacted the Hague-Visby Rules (Malaysia's *Carriage of Goods by Sea Ordinance* 1950 (Revised 1994)).  Thus, per the BOL, the "corresponding legislation" of the destination country "shall apply."  The destination country is the United States, and its corresponding legislation is COGSA (enacted to codify the Hague Rules).

> that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).   The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment.   Celotex, 477 U.S. at 323.   In assessing whether the nonmovant has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"   Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 999 (11th Cir. 1992).

**III.   Discussion**

**A.   COGSA**

Plaintiff seeks partial summary judgment on COGSA's applicability to the on-deck cargo, and thus the applicability of COGSA's $500/per package damages limitation to said cargo, per the BOL – arguing that there is no such limitation in the BOL such that the Carrier

5

must pay for all of the damaged/lost cargo.

Specifically, Plaintiff contends that the Carrier (the Alltair and PACC entities) are not entitled to assert the $500/package limitation of liability because Plaintiff's cargo was "on-deck" cargo to which COGSA does not apply.  Plaintiff explains that for COGSA's $500/package limitation to apply, the BOL would have had to contain language <u>expressly</u> extending the benefit of that limitation to on-deck cargo, and it did not.  From this, Plaintiff argues that the availability of the COGSA limit is a matter of contractual interpretation which can be resolved as a matter of law per the terms/clauses of the BOL.

In contrast, the Carrier defendants dispute Plaintiff's claim, and assert that COGSA's $500/package limitation applies to the on-deck cargo, as no higher declarations/valuations were declared by the shipper such that their liability, if any, is limited to same.   (Doc. 19 at 4 at ¶7). The Carrier defendants assert also, that the on-deck storage of the cargo was done with the knowledge/approval of the shipper (Plaintiff) with full acceptance of any/all risk of damage and loss such that they are not liable or responsible for same.  (<u>Id</u>. at 5 at ¶15). The Carrier defendants state further, if the Court does not agree, then the BOL is ambiguous and issues of fact preclude summary judgment.

At the outset, the parties do not dispute that the cargo was shipped "on deck" and that the BOL states such.   The issue is whether COGSA applies to the on-deck cargo.

The United States Carriage of Goods by Sea Act (COGSA) compulsorily applies to and governs every bill of lading that evidences a contract for the carriage of "goods" by sea in foreign commerce to or from ports in the United States.   46 U.S.C. § 30701 *et seq*. (COGSA). <u>See, e.g.</u>, <u>Itel Container Corp. v. M/V Titan Scan,</u> 139 F.3d 1450, 1452-1453 (11th Cir. 1998);

Realini v. Contship Containerlines, Ltd., 143 F.Supp.2d 1337, 1339 (S.D. Fla. 1999); Unimac Co., Inc. v. C.F. Ocean Service, Inc., 1993 WL 766955, *2 (N.D. Fla. 1993).  COGSA defines goods and provides that "[t]he term 'goods' includes goods, wares, merchandise and articles of every kind whatsoever, **except**…**cargo which by the contract of carriage is stated as being carried on deck and is so carried.**"  COGSA § 1(c) (emphasis added); Realini, 143 F.Supp.2d at 1339; Sideridraulic Sys. SpA v. Briese Schiffahrts GmbH & Co. KG, 2011 WL 3204521, *3 (S.D. Ala. Jul. 26, 2011).  As such COGSA does not apply – by its terms -- to cargo carried on the deck of a vessel when the bill of lading states that the cargo will be carried on deck.  See, e.g., Institute of London Underwriters v. Sea–Land Serv., Inc., 881 F.2d 761, 764 (9th Cir. 1989); General Motors Corp. v. Moore–McCormack Lines, Inc., 451 F.2d 24, 25 n. 1 (2nd Cir. 1971); Realini, 143 F.Supp.2d at 1339; Sail America Fdtn. v. M/V T.S. Prosperity, 778 F.Supp. 1282 (S.D.N.Y. 1991); Z.K. Marine, Inc. v. M/V Archigetis, 776 F.Supp. 1549 (S.D. Fla. 1991); Saint Paul Fire & Marine Ins. Co. v. Sea–Land Serv., Inc., 745 F.Supp. 186, 188 (S.D.N.Y. 1990); Miller Yacht Sales, Inc. v. M/V Vishva Shobha, 494 F.Supp. 1005, 1014 (S.D.N.Y. 1980).

Here, the BOL provides that the cargo will be shipped on-deck at Shipper (Plaintiff's) risk.  The BOL also provides that the Merchant (Plaintiff) expressly agrees and accepts this manner of carriage.  Thus, the on-deck cargo is not automatically subject to COGSA.  Realini, 143 F.Supp.2d at 1339 (citing Inst. of London Underwriters, 881 F.2d at 764 ("[i]t is beyond dispute that COGSA itself does not apply to the on-deck shipment of the yacht[]"), General Motors, 451 F.2d at 25 n. 1 (COGSA did not apply by its own terms to generators carried on deck), Z.K. Marine, 776 F.Supp. at 1553 ("COGSA...does not directly apply…because the yachts were carried on deck[]"), *clarified on denial of reconsideration*, 808 F.Supp. 1561 (S.D.

Fla. 1992) and Sail Am., 778 F.Supp. at 1285).

Nevertheless, while COGSA does not by definition apply to on-deck cargo, parties may contractually extend COGSA to on-deck cargo by executing a bill of lading which "makes COGSA applicable at times when it would not apply of its own force." Realini, 143 F.Supp.2d at 1340 (citing Insurance Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 939 (11th Cir. 1990) and Brown and Root, Inc. v. M/V Peisander, 648 F.2d 415, 419-420 (5th Cir. 1981)); Armco Chile Prodein, S.A. v. M/V Norlandia, 880 F.Supp. 781, 789 (M.D. Fla. 1995) ("COGSA... does not apply of its own force to a contract for on-deck shipment....However, a contract of carriage may incorporate and apply COGSA to on-deck shipments[]") (citations omitted). Put simply, the parties can decide to expressly extend COGSA to on-deck cargo as a contractual term in a bill of lading, and this choice will be enforced. Sail Am., 778 F.Supp. at 1286 ("COGSA applies to the parties' agreement because the parties to the…bills of lading expressly incorporated the statute's provisions in the contract[]").

However, the extension of COGSA to on-deck cargo must be *expressly* stated in a bill of lading because COGSA does not apply *ex prorio vigore*. As explained in Z.K. Marine, 808 F.Supp. at 1563-1564:

> It is undisputed that COGSA does not apply *ex proprio vigore*…because the definition of "goods"….does not include carriage of "on-deck" cargo.[ ] Nonetheless, it is well established that COGSA can be extended to contracts to which it does not apply of its own force if the parties so agree…

The contract (bill of lading) must employ "sufficiently express language" that the on-deck cargo is subject to COGSA. Saudi Pearl Ins. Co. Ltd. v. M/V Aditya Khanti, 1997 WL 291834, *3 (S.D.N.Y. Jun. 2, 1997) (citing SNC S.L.B. v. M/V Newark Bay, 111 F.3d 243, 245 (2nd Cir. 1997) (COGSA applied to on-deck shipment under clause paramount in bill of lading

stating that COGSA "shall apply to goods whether carried on or under deck"); Sail Am., 778 F.Supp. at 1286 (finding COGSA applicable to cargo stowed on deck pursuant to clause specifically providing that deck cargo "shall be governed by [COGSA]"); St. Paul Fire & Marine Ins. Co. v. Sea–Land Serv., Inc., 745 F.Supp. 186, 188, 189 (S.D.N.Y. 1990) (same)).   See also e.g., Realini, 143 F.Supp.2d at 1340 ("[d]espite the fact that COGSA does not apply by its own terms, a bill of lading may include a paramount clause which "makes COGSA applicable at times when it would not apply of its own force[,]" citing M/V Ocean Lynx, 901 F.2d at 939 and Brown and Root, 648 F.2d at 419-420; Inst. of London Underwriters, 881 F.2d at 764 ("this bill of lading shall have effect subject to all the provisions of the Carriage of Goods by Sea Act of the United States of America....The defenses and limitations of said Act shall apply to goods whether carried on or under deck[]"); M/V Newark Bay, 111 F.3d at 245 n.5 (the bill of lading contained a "clause paramount" incorporating by reference COGSA – "[b]ecause COGSA applies only to goods stowed between decks or in the hold…the bill of lading also included a separate clause applying COGSA specifically to goods carried above deck[]"); Pannell v. the American Flyer, 157 F.Supp. 422, 424 (S.D.N.Y. 1957) (the bill of lading provided an explicit incorporation of COGSA to on-deck cargo -- "in respect of goods carried on deck...the carrier shall have the benefit of….Carriage of Goods by Sea Act[]"). Cf. Columbia Machine, Inc. v. DFDS Transp. (US), Inc., 2007 WL 5173280, *3, 5, 7-8 (C.D. Cal. Oct. 4, 2007) (while the bill of lading contained a Clause Paramount that incorporated COGSA's terms generally without reference to on-deck cargo and contained a shipper's risk notation on its face for on-deck cargo, the bill of lading included a specific clause for on-deck cargo being subject to the Hague Rules thus rendering COGSA inapplicable to the on-deck cargo -- "All such Goods, whether carried on

9

deck or under deck...shall be deemed to be within the definition of goods for the purposes of the Hague Rules and shall be carried subject to those Rules[]"); Saudi Pearl, 1997 WL 291834, *3 (the bill of lading's clause paramount did not refer to cargo, even though it incorporated COGSA).

Upon review, neither the BOL nor the Clause Paramount within the BOL expressly state that COGSA applies to on-deck cargo or that COGSA is being extended by agreement of the parties specifically to on-deck cargo. Thus, COGSA's $500/package limitation does not apply. Indeed, the Bill of Lading does not evince – by "sufficiently express language" or otherwise – an agreement to apply COGSA to the on-deck cargo, especially when compared to language in bills of lading which have been found to have expressly incorporated such as in M/V Newark Bay, 111 F.3d at 245, Sail Am., 778 F.Supp. at 1286, Sea–Land Serv., Inc., 745 F.Supp. at 188-189, Inst. of London Underwriters, 881 F.2d at 764 and Pannell, 157 F.Supp. at 424.

Additionally, the Shipper's Risk clause on the face of the BOL is insufficient to equate with an express incorporation of COGSA to on-deck cargo and the $500/package limitation. Saudi Pearl, 1997 WL 291834, *3 (requiring instead "sufficiently express language"); Columbia Machine, 2007 WL 5173280, *9 ("the 'shipper's risk' notation is ambiguous and…could be interpreted to mean that…[the party]…would not be liable for damage not caused by its own negligence[]"). And while the Carrier defendants rely heavily on Deltamax Freight Sys. v. M/V ARISTOTELIS, 1998 WL 1110395, *4 (C.D. Cal. Dec. 7, 1998) to assert otherwise, the Court does not find the holding in Deltamax persuasive.

Further, the Clause Paramount in the BOL -- *at most* -- sets forth the applicability of COGSA to "the cargo" without identifying what type of cargo, whether on-deck, below deck, or

10

otherwise stored/shipped.  In otherwords, rather than evincing an expressly agreed upon application of COGSA to on-deck cargo, the Clause Paramount is *wholly silent* as to COGSA's applicability *to on-deck cargo* (and thus as to COGSA's $500/package limitation).  To the extent that this silence could be construed as ambiguity in the BOL, any such ambiguity is construed against the drafter – the Carrier defendants.  Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd., 525 F.3d 409, 423 (6th Cir. 2008) ("ambiguities in contracts should be construed against the drafter[]"); Marisa v. M/V CMA CGM LA TOUR, 2006 WL 2521269, *3 (S.D.N.Y. Aug. 29, 2006) ("it is well-established that ambiguities should be resolved against the carrier who drafted the agreement[]"); MacClenny Products, Inc. v. Tropical Shipping & Const. Co., Ltd., 832 So.2d 888, 890 (Fla. 4th DCA 2002) ("[a]ny ambiguities in the bill of lading are construed against the carrier[]"); Inst. of London Underwriters, 881 F.2d at 767 ("any ambiguity in the [BOL] must be construed in favor of the shipper and against the carrier"); Transatlantic Marine Claims Agency, Inc. v. M/V OOCL INSPIRATION, 137 F.3d 94, 104 (2nd Cir. 1998) (finding a bill of lading unambiguous, yet specifically stated that "we in no way wish to undercut the principle that the drafter of a bill of lading…should be held accountable for the consequences of poor drafting[]"); Navieros Oceanikos. S.A., Liberian Vessel Trade Daring v. S. T Mobil Trader, 554 F.2d 43 (2d Cir. 1977) ("[t]he traditional rule of construction, applied in admiralty cases, is to construe contract language…most strongly against its drafter….where the contract language is ambiguous where it is susceptible of two reasonable and practical interpretations[]").   See also M/V Vishva Shobha, 530 F.2d at 718 (ambiguity in bill of lading should properly be resolved against the party who prepared the instrument); M/V Sea Land Express, 792 F.2d at 471 (ambiguities in bill of lading are to be resolved against drafter); Agrico

11

Chemical Co. v. SS Atlantic Forest, 459 F.Supp. 638, 646 (E.D. La 1978) (courts must strictly construe clauses purporting to limit liability of ocean carrier).

Thus, Plaintiff's partial motion for summary judgment is **GRANTED in part** on the issue of the inapplicability of COGSA and its $500/package limitation to the BOL.

**B.**     **The Harter Act, Liability, and Premature Nature of the Summary Judgment**

The Plaintiff also raises arguments regarding overall liability issues in this case and the applicability of the Harter Act.  The Court finds that an assessment of the applicability of the Harter Act and defendants' liability is premature, and thus, that portion of Plaintiff's motion is **DENIED** at this time.   As to the premature nature of Plaintiff's motion (incorporating a Rule 56 argument), in light of the findings herein, this argument is **MOOT** as to the singular issue involved on summary judgment -- the applicability of COGSA and its $500/package limitation to on-deck cargo.  Likewise, this determination **MOOTS** Defendants' June 7, 2016 motion to supplement its response to summary judgment (Doc. 78).

**IV.**     **Conclusion**

Accordingly, it is **ORDERED** that Plaintiff's Partial Motion for Summary Judgment (Docs. 29, 35-37) is **GRANTED in part, DENIED in part** and **MOOT in part,** as detailed herein.

**DONE** and **ORDERED** this **13th** day of **June 2016.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**